**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| H. LUNDBECK A/S | ) | |
| | ) | Civil Action No.  1:23-cv-1105 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HON. KATHI VIDAL in her official role as UNDER | ) | |
| SECRETARY OF COMMERCE FOR | ) | |
| INTELLECTUAL PROPERTY AND DIRECTOR | ) | |
| OF THE UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff H. Lundbeck A/S ("Lundbeck" or "Plaintiff"), for its complaint against the Honorable Kathi Vidal, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (hereinafter "Director Vidal" or "Defendant"), states as follows:

## NATURE OF THE ACTION

1.    Lundbeck is the sole owner and assignee of United States Patent No. 11,059,822 ("the '822 patent") (attached as **Exhibit A**).  Lundbeck brings this action to challenge Defendant's determination of the Patent Term Adjustment ("PTA") for the '822 patent under 35 U.S.C. § 154(b)(4)(A).  In short, Lundbeck seeks a judgment that the PTA for the '822 patent be changed from 0 days to 91 days.

2.    Defendant erred in applying 37 C.F.R. § 1.704(c)(13) and *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351 (Fed. Cir. 2019) ("*Supernus*"), to the instant case.  Lundbeck asks that this Court enter a judgment ruling that Defendant's application of Rule 37 C.F.R. § 1.704(c)(13)

-1-

to the facts of this case was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

3.    This action arises under 35 U.S.C. § 154; the Administrative Procedure Act, as codified at 5 U.S.C. §§ 701-706; and the Fifth Amendment to the United States Constitution.

## THE PARTIES

4.    Lundbeck is a Denmark corporation with its principal place of business at Ottiliavej 9, DK 2500 Valby, Denmark.  Lundbeck is a global pharmaceutical company specializing in brain diseases.  Lundbeck is engaged in the research, development, manufacturing and commercialization of pharmaceuticals across the world.  For more than 70 years, Lundbeck has been at the forefront of neuroscience research.

5.    Lundbeck has standing to bring this suit as the assignee of the '822 patent.  In December 2017, inventors Cheryl A. Grice, Daniel J. Buzard, and Michael B. Shaghafi (collectively, "Inventors") assigned all interest in the PCT application that led to the '822 patent to Abide Therapeutics, Inc. ("Abide").  *See* **Exhibit B**.[1]  On May 6, 2019, Abide merged with Lundbeck La Jolla Research Center, Inc. ("Lundbeck LJ").  *See* **Exhibit D**; *see also* **Exhibit E**.  On November 29, 2019, Lundbeck LJ assigned the application to Plaintiff H. Lundbeck A/S.  *See* **Exhibit F**.  By virtue of these transactions, Lundbeck owns all rights, title, and interest in the '822 patent.

6.    Defendant Kathi Vidal is named in her official capacity as the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("PTO").  Director Vidal is the head of the PTO and is responsible for superintending or performing all duties required by law with respect to the granting and issuing of patents.  As such, Defendant is designated by statute as the official responsible for determining the period of Patent Term Adjustments under 35 U.S.C. § 154(b)(4)(A).

---

[1] Beginning in May 2019 and ending in December 2019, the Inventors also assigned all remaining interest, if any, in the national stage application that became the '822 patent to Abide. *See* **Exhibit C**.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction and is authorized to issue the relief sought under 28 U.S.C. §§ 1331, 1338(a), 1361; 35 U.S.C. § 154(b); and 5 U.S.C. §§ 701-706.

8.      Venue is proper in this district under 35 U.S.C. § 154(b)(4)(A) and 28 U.S.C. § 1391(b)(1)-(2) and (e)(1).

9.      This Complaint is timely filed in accordance with 35 U.S.C. § 154(b)(4)(A) because it is being filed within 180 days after the date of the Defendant's decision on Lundbeck's request for reconsideration, February 24, 2023 (attached as **Exhibit G**).

## BACKGROUND AND COMMON ALLEGATIONS

### I.    PATENT TERM GUARANTEE

10.      The Patent Term Guarantee Act of 1999, a part of the American Inventors Protection Act ("AIPA"), amended 35 U.S.C. § 154(b) to resolve applicants' concerns that delays by the PTO during the prosecution of patent applications could shorten the effective life of the resulting patents to less than seventeen years. The amendments created patent term adjustment, commonly referred to as "PTA," a means of adjusting patent term to resolve for delays caused by the PTO.

11.      Patent term adjustment applies to original utility patent applications (including continuations, divisionals, and continuations-in-part) filed on or after May 29, 2000.

12.      In calculating PTA, Defendant must consider PTO delays under 35 U.S.C. § 154(b)(1), as well as any applicant delays under 35 U.S.C. § 154(b)(2)(C).

13.      Under 35 U.S.C. § 154(b)(1)(A), an applicant generally is entitled to PTA for the PTO's failure to execute certain acts during processing and examination within specified deadlines ("A Delay").

14.      Reduction of period of adjustment is subject to limitations under 35 U.S.C. § 154(b)(2), including 35 U.S.C. § 154(b)(2)(C)(i), which states "[t]he period of adjustment of the term of a patent under paragraph [154(b)(1)] shall be reduced by a period equal to the period

of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application" ("Applicant Delay").

15.    35 U.S.C. § 154(b)(2)(C)(ii) says:

> With respect to adjustments to patent term made under the authority of paragraph (1)(B), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude processing or examination of an application for the cumulative total of any periods of time in excess of 3 months that are taken to respond to a notice from the Office making any rejection, objection, argument, or other request, measuring such 3-month period from the date the notice was given or mailed to the applicant.

16.    35 U.S.C. § 154(b)(2)(C)(iii) says: "The Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application."

17.    Under 35 U.S.C. § 154(b)(4)(A),

> An applicant dissatisfied with the Director's decision on the applicant's request for reconsideration under paragraph (3)(B)(ii) shall have exclusive remedy by a civil action against the Director filed in the United States District Court for the Eastern District of Virginia within 180 days after the date of the Director's decision on the applicant's request for reconsideration. Chapter 7 of title 5 shall apply to such action.

## II.    THE '822 PATENT

18.    On May 10, 2019, the national stage application numbered 16/349,047 ("the '047 application") was filed.  *See* **Exhibit H**.  However, when the '047 application was filed, no express request to begin the national examination procedure was made.  *See* **Exhibit I**. Accordingly, under 35 U.S.C. § 371(b), the technical filing date of the '047 application is May 16, 2019, which is 30 months from the priority date of November 16, 2016.  *See* PCT Article 22(1); *see also* MPEP § 1842.

19.    Under the PTO's regulations, applicants have eight months to "provide an application in condition for examination."   *See* 37 C.F.R. § 1.704(c)(13); *see also id.* § 1.704(f) (defining when an application is "in condition for examination").  Those regulations go on to state that any time beyond the eight months that it takes to get the application in a condition for

examination will be counted as Applicant Delay.  More specifically, 37 C.F.R. § 1.704(c)(13) provides:

> Circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application also include the following circumstances, which will result in the following reduction of the period of adjustment set forth in § 1.703 to the extent that the periods are not overlapping: … (13) Failure to provide an application in condition for examination as defined in paragraph (f) of this section within eight months from either the date on which the application was filed under 35 U.S.C. 111(a) or the date of commencement of the national stage under 35 U.S.C. 371(b) or (f) in an international application, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is eight months from either the date on which the application was filed under 35 U.S.C. 111(a) or the date of commencement of the national stage under 35 U.S.C. 371(b) or (f) in an international application and ending on the date the application is in condition for examination as defined in paragraph (f) of this section[.]

20.    On January 17, 2020, the eight-month period elapsed without *any* complaints, rejections, or notice from the PTO.  On March 11, 2020, nearly *ten months* after the May 16, 2019 filing date for the '047 application, the PTO mailed a notice to file corrected application papers.  *See* **Exhibit J**.  In its notice, the PTO claimed:

> The application is not in compliance with 37 CFR 1.52 and PCT Rule 11 because pages 80-84, AND 139 CONTAIN(S) SHADING IN THE TABLE(S).  Application papers (including any electronically submitted papers) must be presented in a form having sufficient clarity and contrast between the background of the paper and the writing thereon to permit the Office to electronically reproduce the papers by use of digital imaging and optical character recognition.  See 37 CFR 1.52(a)(1)(v) and PCT Rules 11.2(a) and 11.9(d).

The regulation cited by the PTO, 37 C.F.R. § 1.52(a)(1)(v) says, with highlighting added:

> All papers, other drawings, that are submitted on paper or by facsimile transmission, and are to become a part of the permanent United States Patent and Trademark Office records in the file of a patent application or reexamination or supplemental examination proceeding, must be on sheets of paper that are the same size, not permanently bound together, and: … (v) Presented in a form having sufficient clarity and contrast between the paper and the writing thereon to permit the direct reproduction of readily legible copies in any number by use of photographic, electrostatic, photo-offset, and microfilming processes and electronic capture by use of digital imaging and optical character recognition.

Further, PCT Rule 11.2(a) says, with highlighting added:

> All elements of the international application (i.e., the request, the description, the claims, the drawings, and the abstract) shall be so presented as to admit of direct reproduction by photography, electrostatic processes, photo offset, and microfilming, in any number of copies.

Finally, PCT Rule 11.9(d) says, with highlighting added:

> All text matter shall be in characters the capital letters of which are not less than 0.28 cm high, and shall be in a dark, indelible color, satisfying the requirements specified in Rule 11.2, provided that any text matter in the request may be in characters the capital letters of which are not less than 0.21 cm high.

21.     Under PTO regulations, Lundbeck could respond to the notice within two months for free, or within three months for a fee. *See* **Exhibit J**; *see also* 35 U.S.C. § 154(b)(2)(C)(ii).

22.     The "shading" present in the tables identified on pages 80 through 84 and page 139 allowed sufficient clarity and contrast between the background of the paper and the writing thereon to permit the PTO to electronically reproduce the papers and the text was in a dark, indelible color (i.e., black), as is shown in the screenshots below:



| TABLE 1 | | |
|---|---|---|
| Chemical Synthesis Example | Structure | Name |
| 1 | | 4-((2-((8-(((1,1,1,3,3,3-Hexafluoropropan-2-yl)oxy)carbonyl)-1,8-diazaspiro[4.5]decan-1-yl)methyl)-5-(trifluoromethyl)phenyl)amino)butanoic acid |

*Figure 1: "Shaded" Table from Page 80*

| Chemical Synthesis Example | Structure | Name |
|---|---|---|
| 5 |  | 4-((3-((8-(((1,1,1,3,3,3-Hexafluoropropan-2-yl)oxy)carbonyl)-2,8-diazaspiro[4.5]decan-2-yl)methyl)-5-(trifluoromethyl)phenyl)amino)butanoic acid |

*Figure 2: "Shaded" Table from Page 81*

| Chemical Synthesis Example | Structure | Name |
|---|---|---|
| 11 |  | 4-((2-((8-(((1,1,1,3,3,3-Hexafluoropropan-2-yl)oxy)carbonyl)-1,8-diazaspiro[4.5]decan-1-yl)methyl)-5-(trifluoromethyl)phenyl)amino)-2,2-dimethylbutanoic acid |

*Figure 3: "Shaded" Table from Page 82*

| Chemical Synthesis Example | Structure | Name |
|---|---|---|
| 17 |  | 4-(3-Chloro-5-((8-(((1,1,1,3,3,3-hexafluoropropan-2-yl)oxy)carbonyl)-1,8-diazaspiro[4.5]decan-1-yl)methyl)phenoxy)butanoic acid |

*Figure 4: "Shaded Table" from Page 83*

| Chemical Synthesis Example | Structure | Name |
|---|---|---|
| 23 |  | 1-((4-Fluoro-2-((8-(((1,1,1,3,3,3-hexafluoropropan-2-yl)oxy)carbonyl)-1,8-diazaspiro[4.5]decan-1-yl)methyl)phenoxy)methyl)cyclopropane-1-carboxylic acid |

*Figure 5: "Shaded" Table from Page 84*

**TABLE 3**

| Ex | MAGL IC$_{50}$ (µM) (human) | MAGL % inh. 5 mg/kg (mouse) | Ex | MAGL IC$_{50}$ (µM) (human) | MAGL % inh. 5 mg/kg (mouse) |
|---|---|---|---|---|---|
| 1 | *** | A | 14 | *** | A |

*Figure 6: "Shaded" Table from Page 139*

A true and correct copy of pages 80 through 84 and 139 of the specification as-filed on May 10, 2019 is included for the Court's convenience as **Exhibit K**. At minimum, Lundbeck cannot be charged with knowing that the PTO would take the position that the shading created a reproduction problem.

23.     On June 5, 2020, Lundbeck responded to the PTO's pre-exam formalities notice. Without agreeing with the PTO's position that the specification was not in a condition for review, Lundbeck provided a substitute specification that removed the shading in the tables on pages 80-84 and 139. A true and correct copy of excerpts from Lundbeck's response, which includes changes to the tables on pages 80-84 and 139, is included for the Court's convenience as **Exhibit L**.

24.     On June 12, 2020, the PTO issued a notice of acceptance of the '047 application under 35 U.S.C. § 371 and 37 C.F.R. § 1.495. *See* **Exhibit M**.

25.     On November 27, 2020, the PTO issued its first office action under 35 U.S.C. § 132.

26.     On March 10, 2021, the PTO issued a notice of allowance. *See* **Exhibit N**.

27.     On June 23, 2021, the PTO issued a notification indicating the patent term adjustment under 35 U.S.C. § 154(b) would be four (4) days. *See* **Exhibit O**. The PTO did not explain how that time period was calculated. *See id.*

28.     On August 25, 2021, Lundbeck requested a total patent term adjustment of 91 days. *See* **Exhibit P**. Lundbeck's calculations started by awarding 134 days to the patentee based on PTO delay under 37 C.F.R. § 1.703(a)(1). *See id.* at 2. Section 1.703(a)(1) concerns adjustments to the patent term because of PTO delay (i.e., A Delay). In particular, Section 1.703(a)(1) adjusts the patent term to account for:

> The number of days, if any, in the period beginning on the day after the date that is fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or the date the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application and ending on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first[.]

In other words, if the PTO takes more than 14 months to either issue an office action or allow the patent after filing, then the patentee is awarded additional days of exclusivity for every day after that 14-month period. *See id.* As applied here, the 14-month deadline passed on July 16, 2020 without an office action or allowance. The first office action did not issue until November 27, 2020—134 days later. Accordingly, as shown in the figure below, Lundbeck was entitled to 134 days of A Delay due to the PTO's failure to act on the '047 application for over 18 months.



*Figure 7: 134 Days of A Delay*

29.    As required by 37 C.F.R. § 1.704(c)(10), Lundbeck deducted 43 days of

Applicant Delay.  *See id*.  Section 1.704(c)(10) says:

> Circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application also include the following circumstances, which will result in the following reduction of the period of adjustment set forth in § 1.703 to the extent that the periods are not overlapping: … (10) Submission of an amendment under § 1.312 or other paper, other than an amendment under § 1.312 or other paper expressly requested by the Office or a request for continued examination in compliance with § 1.114, after a notice of allowance has been given or mailed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date of mailing of the notice of allowance under 35 U.S.C. 151 and ending on the date the amendment under § 1.312 or other paper was filed[.]

In other words, once the PTO issues a notice of allowance, if an applicant submits an amendment

or other paper that the PTO does not expressly request, the days between the notice of allowance

and the time of submission are deducted from any accumulated A Delay.  *See id*.  Here, after the

PTO issued a notice of allowance on March 10, 2021, Lundbeck filed an information disclosure

statement on March 11, 2021, and a corrected applicant data sheet on April 22, 2021.  *See*

**Exhibit P** at 2.  Thus, the amount of Applicant Delay under Section 1.704(c)(10) was 43 days, as

illustrated in the figure below.



*Figure 8: 43 Days of Applicant Delay under Section (c)(10)*

30.    Lundbeck did not calculate any further Applicant Delay under 37 C.F.R. § 1.704.

*See* **Exhibit P**.  Accordingly, Lundbeck subtracted the 43 days of Applicant Delay under

§ 1.704(c)(10) from the 134 days of A Delay under § 1.703(a)(1) to reach a total of 91 days of

PTA.  *See id.* at 3.

31.    On February 7, 2022, the PTO re-determined the PTA to be 58 days.  *See*

**Exhibit Q**.  In so doing, the PTO explained the previous calculation of 4 days as follows:

> The PTA is based on the following determination previously made by the
> Office: (1) The period of delay under 35 U.S.C. 154(b)(1)(A) ("A Delay")
> is 134 days; … (5) The period of delay under 35 U.S.C. 154(b)(2)(C)
> ("Applicant Delay") is 130 days. … The patent set forth a PTA of 4 days
> (134 days of A Delay + 0 days of B Delay + 0 days of C Delay - 0 days of
> Overlap - 130 days of Applicant Delay).

*Id.* at 2-3.

32.    The change in PTA from 4 days to 58 days came from recalculation of Applicant

Delay, as explained on page 3 of **Exhibit Q**:

> The applicant delay includes the following period(s):
>
> (1) 33 days of applicant delay under 37 CFR 1.704(c)(13) for the period beginning on the January 17, 2020, (day after the date that is eight months from the date of commencement of the national stage under 35 U.S.C. 371(b) or (f) in an international application) and ending on February 18, 2020 (date the application is in condition for examination as defined in § 1.704(f).
> (2) 1 day of applicant delay under 37 CFR 1.704(c)(10) for the period beginning on March 11, 2021 (day after the date of the mailing date of the notice of allowance under 35 U.S.C. 151) and ending on March 11, 2021 (date the amendment under § 1.312 or other paper was filed).
> (3) 43 days of applicant delay under 37 CFR 1.704(c)(10) for the period beginning on March 11, 2021 (day after the date of the mailing date of the notice of allowance under 35 U.S.C. 151) and ending on April 22, 2021 (date the amendment under § 1.312 or other paper was filed).

With respect to the "33 days of applicant delay" described above, the PTO went on to say:

> The Office notes patentee failed to include the period of reduction of 33 days under 37 CFR 1.704(c)(13) when calculating the total amount of applicant delay.  The record is clear that petitioner failed to provide the application in condition for examination as defined in 37 CFR 1.704(c) within eight months from the date of commencement.  This is a ground for reduction of PTA under 37 CFR 1.704(c)(13) of 33 days for the period beginning on January 17, 2020, the day after the date that is 8 months from the date of commencement, and ending on February 18, 2020, the date the application was in condition for examination.

*Id.* at 4.  This was the first time the PTO indicated that the PTA determination was based, in part, on Applicant Delay under 37 C.F.R. § 1.704(c)(13).

33.    On April 13, 2022, the PTO issued a second redetermination of PTA.  *See* **Exhibit R**.  This time, the PTO examiner concluded the PTA was 0 days.  As had been the case with the prior redetermination, this decision was based on a recalculation of Applicant Delay:

> The applicant delay includes the following period(s): (1) 141 days of applicant delay under 37 CFR 1.704(c)(13) for the period beginning on the January 17, 2020, (day after the date that is eight months from the date of commencement of the national stage under 35 U.S.C. 371(b) or (f) in an international application) and ending on June 5, 2020 (date the application is in condition for examination as defined in § 1.704(f).

*Id.* at 3.  The PTO examiner continued:

> The prior decision dated February 7, 2022, incorrectly affirmed the calculation of 33 days of applicant delay under 37 CFR 1.704(c)(13) for the period beginning January 17, 2020, and ending on February 18, 2020. Upon further review of the record, the Office finds the application was not in condition for examination as defined under 37 CFR 1.704(f) until June 5, 2020.

*Id* at 4.  Based on the conclusion that the May 16, 2019 application was not in a condition for allowance until June 5, 2020, the PTO calculated Applicant Delay under 37 C.F.R. 1.704(c)(13) to be 141 days.  *See id.* at 5.

34.     On November 9, 2022, Lundbeck filed a second request under 37 C.F.R. § 1.705(b) to correct the PTA to 91 days.  *See* **Exhibit S**.  Lundbeck argued that the PTO erred when attributing 141 days of delay to the patentee under 37 C.F.R. § 1.704(c)(13) for at least two reasons.

35.     *First*, "all requirements under 37 C.F.R. § 1.704(c)(13) and 1.704(f) were satisfied on the commencement date of May 16, 2019."  **Exhibit S** at 3.  That is, Lundbeck argued that 37 C.F.R. § 1.52(a)(1)(v) "contains no prohibition on the use of shading in tables contained in the specification, so long as there is sufficient clarity and contrast between the paper and the writing thereon."  *Id.* at 6.  As is shown in **Exhibit K** and reproduced in the screenshots in paragraph 22 of this Complaint, that requirement was met.  "It is clear from examination of [**Exhibit K**] that the text within the shaded boxes was sufficiently clear and there was sufficient clarity between the background and the writing in the boxes that it could be easily read."  **Exhibit S** at 6.

36.     *Second*, "even assuming the application as filed did not comply with 37 C.F.R. § 1.52(a)(1)(v) due to the shading," Lundbeck argued that the PTO's "delay in reviewing the formalities of the application for about 10 months from the commencement date should not fairly be attributed to" Lundbeck.  **Exhibit S** at 6 (underlining removed).  In other words, because the PTO took no action on the '047 application for 10 months, Lundbeck did not even have the *opportunity* to address any perceived deficiencies within *eight* months.  The timeline below illustrates the inherent unfairness of the PTO's decision.



*Figure 9: 141 days of Applicant Delay under Section (c)(13)*

As is shown in Figure 9, the PTO had not even *identified* shading as an issue until March 11, 2020, yet the PTO blamed *Lundbeck* for delay under 37 C.F.R. § 1.704(c)(13) that allegedly began on January 17, 2020.

37.     Without even knowing the PTO considered the shading shown in Figures 1 through 6 as problematic under Section 1.704(c)(13), there was nothing Lundbeck could have done to conclude prosecution of the patent.  Indeed, the requirement is that the PTO must be able to reproduce the images, something only the *PTO* (and not Lundbeck) could know.  As the screenshots in Figures 1 through 6 demonstrate, from Lundbeck's perspective, reproduction was easily accomplished.

38.     As soon as the PTO identified the issue, Lundbeck timely responded.  *See* **Exhibit S**.  Notably, even if Lundbeck had removed the shading on the very next day after the PTO issued its formalities rejection (i.e., March 12, 2020), under the PTO's Section 1.704(c)(13) reasoning, Lundbeck *still* would have been charged with 55 days of "Applicant Delay," as

illustrated in Figure 10 below.  This is inherently unfair, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.



*Figure 10: Hypothetical where Lundbeck removes shading the next day*

39.     Lundbeck reminded the PTO that the United States Court of Appeals for the Federal Circuit recently held that the "USPTO cannot . . . count as applicant delay any period of time during which there were no efforts in which the applicant could have engaged to conclude prosecution of the patent."  **Exhibit S** at 6 (quoting *Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1359 (Fed. Cir. 2019)).  As is clearly shown in Figure 10, under the PTO's reasoning, even if Lundbeck had immediately responded to the PTO's formalities rejection, it *still* would have been charged with 55 days of delay which were the product of the *PTO*'s failure to process the '047 application.  The PTO "attributing delay to [Lundbeck] that is entirely due to the time required by the [PTO] to conduct its own internal review[] is inconsistent with the court's reasoning" in *Supernus*.  *Id.* at 7.  And the PTO's assertion of its regulations under Sections 1.704(c)(13) and 1.704(f) as an interpretation of the statute "is not entitled to deference under the

*Chevron* framework because the application is inconsistent with the plain language of the statutory text, 35 U.S.C. § 154(b)(2)(C)." *Id.*[2]

40.     Lundbeck argued that proper application of the PTO's regulations would measure Applicant Delay "starting on the day after the period of reply to a Notification expires and ending on the day the applicant filed papers in response to the Notification and in compliance with 37 C.F.R. § 1.52(a)(iv)." **Exhibit S** at 7. "Under that method of calculating applicant delay, there would have been no delay attributable to [Lundbeck under 37 C.F.R. § 1.704(c)(13)] since, as stated earlier, [Lundbeck] filed a response to the Notification within [three] months after receiving it." *Id.* Based on these calculations, Lundbeck again asked for a total PTA of 91 days. *See id.* at 8.

41.     On February 24, 2023, the PTO issued a final decision denying the request for reconsideration and indicating it was Director Vidal's decision "for purposes of seeking judicial review under 35 U.S.C. 154(b)(4)." **Exhibit G** at 2. The PTO concluded:

> The sole issue in dispute is the determination of 141 days of applicant delay under 37 CFR 1.704(c)(13). The rule is clear that an international patent application in which the national stage commenced under 35 U.S.C. 371 on or after December 18, 2013, may be subject to a reduction in patent term adjustment pursuant to 37 CFR 1.704(c)(13) if it is not in condition for examination within eight months from the date of commencement pursuant to 37 CFR 1.704(c)(13). The Office finds the application was not in condition for examination as defined under 37 CFR 1.704(f) until June 25, 2020.

*Id.* at 5.[3]

42.     In reaching this conclusion, the PTO attempted to dodge the issue of whether the March 11, 2020 formalities rejection was unfounded in the first instance:

---

[2] Lundbeck also preserves its argument that the PTO's interpretation of the statute is entitled to no deference in the event that the Supreme Court overturns *Chevron*.

[3] The "June 25, 2020" date appears to be a typographical error. Under the PTO's reasoning (and calculations), Lundbeck removed the shading on June 5, 2020, *see* **Exhibit L** at 2, and the PTO accepted the application on June 12, 2020, *see* **Exhibit M**.

> On June 5, 2020, applicant filed a reply to the Notification of March 11, 2020, correcting the papers with the submission of a substitute specification (clean and marked-up copies), a statement of no new matter, and an amendment to the claims. When filing the response on June 5 2020, petitioner did not dispute the USPTO's determination that the application was not in compliance with 37 CFR 1.52 because of shading on the table(s) nor the requirement to provide a substitute specification to correct the defects in the application papers. Rather, petitioner attempts to argue the accuracy of the Notification of March 11, 2020, for the first time in the present request for reconsideration of PTA.

*Id.* at 6.  This ignores that Lundbeck did not *accept* or *agree* with the PTO's decision when responding.  *See* **Exhibit L**.  Instead, for the sake of expediency, Lundbeck simply removed the shading.  *See id.*  Had the PTO, at that time, informed Lundbeck that it would deduct from the PTA a minimum of 55 days from the patent term, as depicted in Figure 8, Lundbeck would have challenged such a decision.  However, given that the PTO only explained its PTA deduction for the first time on February 7, 2022, Lundbeck had no way of knowing there was anything to protest.  *See* **Exhibit Q**.  Once the PTO explained itself, Lundbeck protested at the earliest opportunity.  *See* **Exhibit G**.

43.    The PTO ended its decision with a half-hearted acknowledgment that *it* was the source of the problem:

> The Office acknowledges applicant did not receive notification of the defects of the application at an earlier time; however, petitioner is reminded that it is the applicant's responsibility to present application papers in a form having sufficient clarity and contrast between the background of the paper and the writing thereon to permit the Office to electronically reproduce the papers by use of digital imaging and optical character recognition. Accordingly, the Office considers the application as having papers in compliance with § 1.52 for purposes of 37 CFR 1.704(f) on June 5, 2020, the filing date of the latest reply correcting the papers prior to the mailing of the non-final action under 35 U.S.C. 132 on November 27, 2020.

**Exhibit G** at 7.  Refusing to engage with Lundbeck's evidence that the initial application papers *were*, in fact, "in a form having sufficient clarity and contrast between the background of the paper and the writing thereon to permit the Office to electronically reproduce the papers by use of digital imaging and optical character recognition," the PTO blamed Lundbeck for not having done so at the outset.  *See id.*  It rejected the request for reconsideration and maintained a finding

that Lundbeck should be charged with 141 days of applicant delay from the period between January 17, 2020 and June 5, 2020. *See id.*

44.     Although the PTO rejected Lundbeck's petition to reconsider, it has not taken a consistent approach on this issue. On information and belief, the PTO has reached the *opposite* conclusion and assessed no Applicant Delay in similar circumstances. This further demonstrates that its decision is arbitrary, capricious, and unlawful under 35 U.S.C. § 154(b)(2)(C) and *Supernus*.

45.     Additionally, the PTO's regulations themselves make little sense. There are numerous formatting, fees, sequence listing, and other requirements that the PTO checks before processing an application. Some issues, like the shading issue here, can only be identified by the PTO. Others—e.g., whether a particular fee has been paid—are more straightforward. Yet, for purposes of assessing whether an application is "in condition for examination," the PTO focuses on some requirements but not others, for no apparent reason. *See* 37 C.F.R. § 1.704(f). Instead of applying the statutory grace period of three months to fix *any* formatting or other defects, *see* 35 U.S.C. § 154(b)(2)(C)(ii), the PTO arbitrarily ascribes applicant delay to some defects but not others. This is arbitrary, capricious, an abuse of discretion, and unlawful. The three-month statutory grace period under Section 154(b)(2)(C)(ii) should apply to *all* PTO objections or rejections irrespective of whether the application is in the pre-examination, examination, or post-examination period.

## III.    THE PROPER CALCULATION OF PTA FOR THE '822 PATENT

46.     Under 35 U.S.C. § 154(b)(2)(C)(i), "[t]he period of adjustment of the term of a patent under [154(b)(1)] shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application."

47.     Under 35 U.S.C. § 154(b)(2)(C)(ii), an applicant has "failed to engage in reasonable efforts to conclude processing or examination of an application" when an applicant takes "in excess of three months . . . to respond to a notice from the Office making any rejection,

objection, argument, or other request."  In other words, so long as an applicant responds within three months to an office action or other rejection from the PTO, the applicant has *not* failed to engage in reasonable efforts under Section 154(b)(2)(C)(i).

48.     Here, Lundbeck did not fail to engage in reasonable efforts to conclude prosecution for the period from January 17, 2020 through June 5, 2020.  The PTO did not even make Lundbeck aware of any perceived defect until March 11, 2020.  Under the PTO's reasoning, even though Lundbeck did not have notice of any defect for those first 55 days, Lundbeck would be charged with those days as Applicant Delay.  *See supra*, ¶ 36, Figure 8.  And this time period could be much longer—all depending not on anything the applicant has done during that time but simply on how long it takes the PTO to process the application and identify the purported defect.  This does not make sense.  Congress restricted the PTO's ability to penalize patentees for delays out of their control.  This is such a case.  Lundbeck should not lose months of patent term because the *PTO* took a long time to process the '047 application.  Nor should the amount of lost patent term turn on the length of time it takes the PTO to process an application and identify a purported defect—something entirely out of the patentee's control.

49.     Lundbeck should not be charged with any Applicant Delay under 35 U.S.C. § 154(b)(2)(C)(i) for the time taken to remove shading in the tables.  Even if the PTO's determination deeming the shading improper was correct, any delay in removing the shading was attributable to the *PTO's* delay in processing the '047 application (A Delay under 35 U.S.C. § 154(b)(1)(A)).  Lundbeck promptly responded to the PTO's notification within the three months allowed.  *See* 35 U.S.C. § 154(b)(2)(C)(ii).

50.     The correct PTA for the '822 patent is 91 days, and the PTO's determination to the contrary is arbitrary, capricious, an abuse of discretion, and unlawful.

**IV.    DEFENDANT'S ABROGATION OF THE PATENT TERM GUARANTEE**

51.     Defendant has improperly calculated the PTA for the '822 patent in a manner that deprives Lundbeck of the full amount of A Delay because Defendant reduced Lundbeck's

accrued PTA by an amount that exceeded the general limitation on PTA reduction as set forth at 35 U.S.C. § 154(b)(2)(C)(i).

52.    Defendant has inappropriately relied upon 37 C.F.R. § 1.704(c)(13) to support its flawed calculation of PTA.  There was nothing wrong with the '047 application when it was originally filed.  Even if there was, application of Section 1.704(c)(13) to this case is inconsistent with 35 U.S.C. § 154(b)(2)(C) because Lundbeck did not have *notice* of any defect until the clock had been running for almost *two months*, and because Lundbeck responded to the notice within the statutory three months.

53.    Because Defendant's application of 37 C.F.R. § 1.704(c)(13) conflicts with the clear and unambiguous language of 35 U.S.C. § 154(b)(2)(C), and *Supernus*, Lundbeck seeks correction of the PTA to reflect 91 days of PTA.

## CLAIMS FOR RELIEF

## I.    COUNT ONE (PATENT TERM ADJUSTMENT UNDER 35 U.S.C. § 154)

54.    The allegations of paragraphs 1-53 are incorporated in this claim for relief as if fully and expressly set forth herein.

55.    The PTO did not comply with 35 U.S.C. § 154(b)(2)(C) in determining the reduction of Plaintiff's patent term adjustment, and thus unfairly deprived Plaintiff of the full amount of A Delay Plaintiff is entitled to pursuant to 35 U.S.C. § 154(b)(1)(A).

56.    Plaintiff made reasonable efforts to conclude prosecution by filing an application with the PTO, which were frustrated by delayed prosecution by the PTO.  Accordingly, Plaintiff is entitled to at least 91 days of PTA.

57.    Upon receipt of the PTA Determination on July 13, 2021, applicant acted reasonably and diligently to file two timely requests for reconsideration on August 25, 2021, and on November 9, 2022.  Both requests were rejected by the PTO.

58.    Adjustment of the PTA by 184 days as Applicant Delay in this case is inconsistent with 35 U.S.C. § 154(b)(2)(C).  To the extent such adjustment follows from the PTO's rules and

regulations (including 37 C.F.R. § 1.704(c)(13)), those rules and regulations are to that extent inconsistent with the statute (including 35 U.S.C. § 154(b)(2)(C)(iii)) and invalid.

59.    The PTO's adjustment of PTA by 184 days as Applicant Delay is also arbitrary and capricious as the PTO inconsistently notifies applicants of errors in patent applications and allows for corrections without calculating it as Applicant Delay.

60.    Plaintiff is entitled to an additional 91 days of patent term for the '822 patent such that the 0 days of PTA granted by the PTO should be changed to 91 days.

## II.    COUNT TWO (DECLARATORY JUDGMENT UNDER THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 702 *ET SEQ.*)

61.    The allegations of paragraphs 1-60 are incorporated in this claim for relief as if fully and expressly set forth herein.

62.    The PTO's application of 37 C.F.R. § 1.704(c)(13), 37 C.F.R. § 1.704(f), and *Supernus* to the facts of this case is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because it contradicts the plain meaning of 5 U.S.C. § 706(2)(A) and because it produces the unfair and irrational result of depriving Lundbeck of the entire A Delay accrued on account of the *PTO's* failure to process the '047 application in a timely manner.  This undermines the intent of 35 U.S.C. § 154(b)(2)(C)(i) to limit a reduction of period of adjustment "to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application."

63.    Erroneous application of 35 U.S.C. § 154(b)(2)(C), 37 C.F.R. § 1.704(c)(13), 37 C.F.R. § 1.704(f), and *Supernus* to the facts of this case deprived Plaintiff of the full and appropriate term of the '822 patent.  The PTO's reduction of PTA by 141 days as Applicant Delay is arbitrary, capricious, and unlawful pursuant to 5 U.S.C. § 706(2)(A).

64.    Plaintiff has adequately exhausted all of the available administrative remedies under 35 U.S.C. § 154(b)(3)(A)-(B) or, in the alternative, pursuit of any further administrative remedies is futile.

65.    Defendant's determination of PTA for the '822 patent on February 24, 2023, under 35 U.S.C. § 154(b)(3)(B)(ii), is the final agency action and is reviewable by a district court in accordance with 35 U.S.C. § 154(b)(4)(A) and 5 U.S.C. § 704.  Plaintiff has been afforded no adequate remedy at law for Defendant's determination of PTA for the '822 patent.

66.    The PTO's action caused Plaintiff to suffer legal wrong and adversely affected the rights of Plaintiff under the '822 patent.  Plaintiff will suffer irreparable injury if Defendant is not directed to recalculate PTA for the '822 patent.

67.    An order directing Defendant to recalculate PTA for the '822 patent would not substantially injure any other interested parties, and the public interest will be furthered by correcting a procedural action that is contrary to law.

68.    Plaintiff is entitled to additional patent term for the '822 patent such that the 0 days of PTA granted by the PTO should be changed to 91 days.

## III.    COUNT THREE (VIOLATION OF THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES)

69.    The allegations of paragraphs 1-68 are incorporated in this claim for relief as if fully set forth herein.

70.    The Fifth Amendment of the Constitution of the United States provides in relevant part, "nor shall private property be taken for public use, without just compensation."

71.    Plaintiff enjoys a substantial and cognizable private property right in the full and complete term of the '822 patent.

72.    Plaintiff has not failed to pay any necessary maintenance fees to the PTO required to maintain its rights in the '822 patent.

73.    Defendant's purposeful and deliberate diminution of the patent term of the '822 patent constitutes a taking of Plaintiff's property without just compensation, in violation of the Fifth Amendment of the Constitution of the United States.

74.    Plaintiff is entitled to additional patent term for the '822 patent such that the 0 days of PTA granted by the PTO should be changed to 91 days.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

A.      Issue an Order changing the period of PTA for the '822 patent from 0 days to 91 days, or any period thereof, including at least 91 days, deemed in accordance with 35 U.S.C. § 154(b)(2)(C) and requiring Defendant to alter the term of the '822 patent to reflect such additional PTA;

B.      Declare pursuant to 35 U.S.C. § 154(b)(2)(C) that Defendant's application of 37 C.F.R. § 1.704(c)(13) in this case is invalid and contrary to law, and that the correct amount of PTA for the '822 patent is 91 days; and

C.      Grant such other and further relief as the nature of the case may admit or require and as may be just and equitable.


Dated:  August 18, 2023

_____
Allison B. Smith

Eric P. Tuttle, *pro hac vice pending*
WILSON SONSINI GOODRICH &
ROSATI, P.C.
701 Fifth Avenue
Suite 5100
Seattle, WA 98104
(206) 883-2513
eric.tuttle@wsgr.com

Allison B. Smith (#89580)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K Street NW
Fifth Floor
Washington, DC 20006
(202) 973-8845
allison.smith@wsgr.com

Ariel C. Green Anaba, *pro hac vice pending*
WILSON SONSINI GOODRICH &
ROSATI, P.C.
633 West 5th Street
Suite 1550
Los Angeles, CA 90017
(323) 210-2985
aanaba@wsgr.com

Jamila Cambridge, *pro hac vice pending*
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 849-3394
jcambridge@wsgr.com

*Counsel for Plaintiff H. Lundbeck A/S*